IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAFAYETTE SQUARE SBLC, LLC,<br>175 SW 7th Street, Unit 2307<br>Miami, FL 33130,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION,<br>409 3rd Street, SW<br>Washington, DC 20416,<br><br>and<br><br>KELLY LOEFFLER, Administrator, United<br>States Small Business Administration,<br>409 3rd Street, SW<br>Washington, DC 20419,<br><br>    Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Lafayette Square SBLC, LLC ("Lafayette Square SBLC"), by and through counsel, alleges and states as follow:

### INTRODUCTION

1. This action is brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking to set aside a decision of the Small Business Administration (the "SBA") that unlawfully rescinded a Small Business Lending Company ("SBLC") license awarded to Lafayette Square SBLC.

2. Congress passed the Small Business Act (the "Act"), 15 U.S.C. § 631 *et seq.*, creating the SBA with the mission to "aid, counsel, assist, and protect . . . the interests of small business concerns in order to preserve free competitive enterprise . . . and to maintain and

1

strengthen the overall economy of our nation." 15 U.S.C. § 631(a). The SBA accomplishes its mission through various programs, including the 7(a) Loan Program authorized under Section 7(a) of the Act. *See* 15 U.S.C. § 636(a). Under the 7(a) Loan Program, the SBA guarantees the repayment of portions of loans made by banks and other lending institutions, including SBLCs, to small businesses that lack adequate access to capital.

3. In 2023, following a more than 40-year moratorium on new SBLC licenses, the SBA announced that it would be accepting applications for up to three new SBLC licenses. The next year, for a second time since 1981, the SBA announced that it would again be accepting applications for up to three new SBLC licenses.

4. Lafayette Square SBLC's sole member and parent company, Lafayette Square USA, Inc. ("Lafayette Square USA"), is an investment platform focused on investment opportunities in overlooked communities and underserved markets across the United States. Upon the SBA's lifting of the SBLC license moratorium, Lafayette Square SBLC was created exclusively for the purpose of applying for and operating as an SBLC.

5. Following an immensely thorough application process, through which Lafayette Square SBLC demonstrated compliance with all SBLC eligibility requirements, Lafayette Square SBLC received notice that its Application had been approved subject to the completion of certain limited requirements, which had either already been, or were prepared to be, presented to the SBA during the application process. According to the Award Letter, Lafayette Square SBLC was required to provide certain additional materials and to fund regulatory capital to satisfy lender oversight requirements. Upon receipt of the additional materials and satisfaction of all lender oversight requirements, the SBA was to provide Lafayette Square SBLC with its Form 750 Loan Agreement for execution.

6. Shortly after receiving the Award Letter, at the SBA's request, Lafayette Square SBLC provided the SBA with a statement to be included in the SBA's public announcement marking the award of Lafayette Square SBLC's new SBLC license. On December 23, 2024, the SBA published a press release announcing that Lafayette Square SBLC and three other lenders had been awarded new SBLC licenses—without any statement that the award was tentative. SBA's announcement touted that the awarding of the new SBLCs "broadens the availability of 7(a) loans in low-income and other underserved communities nationwide[.]"

7. Thereafter, on January 17, 2025, Lafayette Square SBLC submitted to the SBA all materials requested in the Award Letter, including additional materials demonstrating compliance with SBLC regulations and lender oversight requirements, and funded the required regulatory capital. In other words, Lafayette Square SBLC had satisfied all of the requirements to execute the Form 750 Loan Agreement and receive its SBLC license.

8. Inexplicably, in February 2025, after the SBA's Press Release (defined below) announcing the award of the SBLC license to Lafayette Square SBLC, and after Lafayette Square SBLC had engaged in multiple conversations with SBA regarding the required materials, submitted all required materials, funded the required regulatory capital, and demonstrated all necessary compliance with the SBA's lender oversight requirements, the SBA unlawfully rescinded Lafayette Square SBLC's award of an SBLC license. Indeed, without regard for the voluminous eligibility and compliance evidence provided, the public announcement of the SBLC license award, and with no specific explanation whatsoever, the SBA asserted that Lafayette Square SBLC's award suddenly "no longer effectuates 7(a) Loan Program goals and Agency priorities." Because Lafayette Square SBLC had already been found to satisfy the necessary

3

eligibility and application requirements, the SBA's post hoc, unilateral decision to rescind Lafayette Square SBLC's new license was unlawful in violation of the APA.

9. The SBA's unlawful rescission of Lafayette Square SBLC's award of an SBLC license is arbitrary and capricious and contrary to law.

## JURISDICTION AND VENUE

10. The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1).

12. The Court has remedial authority to enter declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. § 706.

## PARTIES

13. Plaintiff Lafayette Square SBLC, LLC is a Delaware limited liability company formed exclusively to operate as an SBLC. Lafayette Square SBLC's sole member is Lafayette Square USA, a Delaware corporation with its principal place of business in Miami, Florida. Lafayette Square USA is a business development company with a commitment to making a majority of its investments in either underserved areas or to significant employers of low-to-moderate income employees. Lafayette Square USA has wholly-owned subsidiaries that each holds Small Business Investment Company ("SBIC") and Specialized Small Business Investment Company ("SSBIC") licenses. Non-party LS BDC Adviser, LLC, a wholly owned subsidiary of non-party Lafayette Square Holding Company, LLC ("Lafayette Square"), serves as an investment adviser to Lafayette Square USA. Founded in 2020, Lafayette Square is investment platform that promotes public welfare and economic growth across America by principally lending to

creditworthy businesses located in underserved communities or employing low-to-moderate income people.

14. Defendant United States Small Business Administration is an independent agency of the federal government. The SBA's mission is to help Americans start, build, and grow business.

15. Defendant Kelly Loeffler is the Administrator of the SBA and oversees its operations. Administrator Loeffler is sued in her official capacity.

## BACKGROUND

### A. The 7(a) Loan Program and Small Business Lending Companies

16. Section 7(a) of the Act authorizes the SBA to provide loans to small business concerns. 15 U.S.C. § 636(a). The SBA provides such financing by, *inter alia*, guaranteeing loans from private lenders (the "7(a) Loan Program"). *See id*.

17. The Act further provides that the SBA "shall authorize lending institutions and other entities in addition to banks to make loans authorized under" the 7(a) Loan Program. 15 U.S.C. § 7(a)(17).

18. SBLCs are non-depository lending institutions authorized by the SBA to only make loans pursuant to Section 7(a) of the Act and loans to Intermediaries in SBA's Microloan Program. 13 C.F.R. § 120.10. SBLCs are subject to all regulations pertaining to the 7(a) Loan Program and Loan Program Requirements (as defined in 13 C.F.R. § 120.10).

19. Unlike most other 7(a) Lenders, which are federally regulated depository institutions, SBLCs are supervised and examined solely by the SBA itself and subject to exacting regulations. In addition to complying with all requirements for SBA 7(a) Lenders and Supervised Lenders (as defined in 13 C.F.R. § 120.10), SBLCs must comply with specific additional requirements regarding formation, capitalization, and enforcement action (*see* 13 C.F.R.

§§ 120.470-90), as well as the requirements in the SBA's Standard Operating Procedure ("SOP") 50 56 1, Section A, Chapters 1 and 2.[1]

20.　　On August 17, 1981, the SBA published a proposed rule imposing a moratorium on licensing new SBLCs. 46 Fed. Reg. 41,523 (Aug. 17, 1981). Thereafter, on January 4, 1982, the SBA published a final rule repealing its authority to award additional SBLC licenses (the "Moratorium"). 47 Fed. Reg. 9 (Jan. 4, 1982). At the time the Moratorium was put in place, there were only 14 SBLC licenses.

21.　　On November 7, 2022, after more than 40 years, the SBA published a notice of proposed rulemaking to lift the Moratorium on licensing new SBLCs. 87 Fed. Reg. 66,963 (Nov. 7, 2022). On April 12, 2023, the SBA published a final rule lifting the Moratorium and establishing a plan to award three new SBLC licenses in the first year following implementation (the "Final Rule"). 88 Fed. Reg. 21,890 (Apr. 12, 2023).

22.　　On May 22, 2023, in response to the Final Rule, the SBA published a notification opening the application period for new SBLC licenses from June 1, 2023, to July 31, 2023 (the "2023 Application Notice"). 88 Fed. Reg. 32,623 (May 22, 2023).

23.　　On November 1, 2023, the SBA announced on its website that it had awarded three new SBLC licenses as a result of the 2023 Application Notice.[2]

---

[1] *See* SBA, *Lender participation requirements*, SOP 50 56 1 (Aug. 1, 2023) https://www.sba.gov/document/sop-50-56-1-lender-participation-requirements

[2] *See* SBA, *Biden-Harris Administration Takes Historic Step in Expanding Access to Capital and Filing Lending Gaps in Underserved Communities*, Archived News Release 23-86 (Nov. 1, 2023) https://www.sba.gov/article/2023/11/01/biden-harris-administration-takes-historic-step-expanding-access-capital-filling-lending-gaps.

24. On August 9, 2024, the SBA published a notification opening another application period for up to three additional SBLC licenses from September 2, 2024, to October 15, 2024 (the "2024 Application Notice"). 89 Fed. Reg. 65,174 (Aug. 9, 2024).

25. As contemplated by the Final Rule, the 2024 Application Notice required new license applicants to submit specific materials to enable the SBA to evaluate the application against certain evaluation criteria, including, among other things: documentation evidencing the form and organization of the proposed SBLC; identification of the proposed SBLC's capitalization; the proposed SBLC's geographic area of operation; identification of all officers, directors, and/or key employees; a corporate organization chart showing the relationship of the proposed SBLC with all related affiliates; executed SBA Form 1081 and fingerprint documentation for all individuals and entities identified in the application; proof of fidelity insurance coverage; a detailed business plan for the proposed SBLC; all documents associated with expected external financing; audited financial statements of the proposed SBLC's parent company; a written opinion from independent outside legal counsel addressing whether the proposed SBLC is properly formed and has authority to enter into the sale transaction; and various other certified statements and/or resolutions from the proposed SBLC evidencing compliance with pertinent regulations applying to SBLCs. *See* 89 Fed. Reg. at 65,176.

26. The 2024 Application Notice also set out factors that would be considered by the SBA when evaluating new SBLC license applications, such as: the lending policies of the proposed SBLC and its alignment with the SBA's mission; historical performance measures; whether the applicant or any officers, directors, or key employees, are subject to legal proceedings; performance data associated with the proposed SBLC, its parent company, or its senior management team; the proposed SBLC's ability to address gaps in small business lending,

especially those not served by the existing 7(a) Lender population; affiliation with lenders previously sanctioned by the SBA; and the ability to sustain significant SBA 7(a) lending for at least three years. *See* 89 Fed. Reg. at 65,177.

27. Under the 2024 Application Notice, after the application period, the SBA would make a final determination on the applications received and provide written notification to the applicant whether it had been approved.

**B. Lafayette Square SBLC's Application and Approval for SBLC #017**

28. On or about September 30, 2024, in accordance with the application requirements in the 2024 Application Notice, Lafayette Square SBLC submitted its new SBLC license application materials (the "Application").

29. In its Application and supplemental submissions requested by the SBA, Lafayette Square SBLC demonstrated that it satisfied all requirements to be awarded a new SBLC license and operate as an SBLC. Among other things, Lafayette Square SBLC submitted: copies of its organizational documents; an opinion of independent counsel regarding its compliance with federal, state, and local formation laws; a certification that Lafayette Square SBLC is in compliance with all applicable federal, state, and local laws; and documents evidencing that all economic interest in Lafayette Square SBLC is owned by its sole member and manager Lafayette Square USA.

30. With respect to its structure and capitalization, the Application included materials and documents showing, among other things: Lafayette Square SBLC's corporate structure and relationship with Lafayette Square USA and Lafayette Square, including its ability to benefit from an integrated lending platform capable of originating, servicing, and liquidating 7(a) loans; Lafayette Square SBLC's management structure, including biographies and SBA Form 1081s for

each of the sole member, management, officers, and key employees; the ability to secure and fund equity capital of $5,000,000 from Lafayette Square SBLC's sole member, Lafayette Square USA, and 2023 year-end consolidated financial statements of Lafayette Square USA; details of a proposed credit facility to obtain a warehouse line of credit to fund originations; and a fidelity insurance quote.

31. Regarding its goals and objectives, Lafayette Square SBLC provided a comprehensive business plan, including, among other things: multi-year projections; Lafayette Square SBLC's credit policy, internal control policy, and general policies, procedure, and internal controls, including an anticipated wind-down plan if leaving the 7(a) program; and Lafayette Square SBLC's capital plan, including projected secondary market activities and reflecting a sensitivity analysis. Furthermore, the Application explained that Lafayette Square SBLC would be initially capable to conduct business as a nationwide SBLC.

32. Additionally, the Application provided detailed loan origination, closing and servicing procedures to be employed by Lafayette Square SBLC.

33. On or about December 13, 2024, Lafayette Square SBLC received a letter from the SBA informing it that the SBA had provided a tentative award of a new SBLC license #017 (the "Award Letter"). The Award Letter stated:

> Congratulations! Lafayette Square SBLC, LLC's application has resulted in a tentative award for an SBA Small Business Lending Company (SBLC) license; however, **DO NOT** publicly announce this license offer prior to coordinating with SBA. SBA would like to coordinate a joint announcement.

34. The Award Letter went on to explain that next steps would require Lafayette Square SBLC to work with the SBA's Office of Credit Risk Management ("OCRM") to ensure full compliance with all requirements for SBA Lenders, SBA Supervised Lenders, and specific SBLC requirements in 13 C.F.R. §§ 120.460-490.

9

35. Additionally, the Award Letter stated that Lafayette Square SBLC would be asked to submit bank statements evidencing the unencumbered paid-in capital of at least $5 million was in Lafayette Square SBLC's account.

36. The Award Letter further requested that Lafayette Square SBLC work with OCRM to understand all SBA lender reporting and oversight requirements, including by submitting: (i) a credit policy that demonstrates compliance with Title 13 of the CFR and SBA's SOPs for originating, servicing, and liquidation of 7(a) loans; (ii) evidence of and supporting documentation and methodologies demonstrating that any scoring model to be used is predictive of loan performance, validated by a third-party; and (iii) internal control policies adopted by Lafayette Square SBLC's board of directors that comply with 13 C.F.R. § 120.460 and provide adequate direction for effective control over and accountability for operations, programs, and resources.

37. Finally, the Award Letter explained that once all reporting and oversight requirements were met, Lafayette Square SBLC would be required to execute SBA's Form 750, Small Business Administration Loan Guaranty Agreement (a "Form 750 Loan Agreement").

38. The Award Letter requested that Lafayette Square SBLC confirm its acceptance of the SBA's offer by directly communicating with the OCRM to coordinate a joint public announcement.

39. In the following weeks, Lafayette Square SBLC coordinated with the OCRM and the SBA to discuss the remainder of the licensing process, including a joint press release announcing the SBA's award of a new SBLC license to Lafayette Square SBLC. Specifically, on or about December 18, 2024, Lafayette Square SBLC was contacted by a member of the OCRM to schedule an introductory call to discuss the remaining aspects of the licensing process. Concurrently, on December 18, a member of the SBA's Office of Communications and Public

Liaison ("OCPL") reached out to Lafayette Square SBLC to request a statement to be used in the SBA's public announcement and inquire as to whether Lafayette Square SBLC intended to issue its own announcement. The OCPL further advised its belief that other "awardees" intended to release their own statements to amplify "the news."

40. On or about December 23, 2024, the SBA issued a press release (the "Press Release") on its website announcing that it had "granted" new SBLC licenses to Lafayette Square SBLC and three other SBLCs—Cooperative Business Services, A10 Capital, and Stonehenge Capital.[3] The SBA's then-Administrator Isabel Casillas Guzman stated in the Press Release: "Congratulations to the four new licensees as they work alongside the mission-focused teams at the SBA to put the American dream of business ownership within reach for more entrepreneurs." The Press Release went on to feature a statement from Lafayette Square USA's President and CEO Damien Dwin voicing Lafayette Square SBLC's appreciation and enthusiasm for receiving an SBLC license.

41. Thereafter, Lafayette Square SBLC submitted all required materials to permit the execution of the Form 750 Loan Agreement, as reflected in the Award Letter. Specifically, on or about January 17, 2025, Lafayette Square SBLC delivered copies of: its credit policy demonstrating compliance with the SOPs of the SBA for originating, servicing, and liquidation of 7(a) loans; and the internal control policies adopted by Lafayette Square SBLC's board of directors that comply with 13 C.F.R. § 120.460 and provide adequate direction for effective control over and accountability for operations, programs, and resources. In the same correspondence, Lafayette Square SBLC confirmed that its parent and sole member Lafayette Square USA, had funded its

---

[3] *See* SBA, *SBA Strengthens Lending Network with New Public-Private Partnerships*, Archived News Release 25-20 (Dec. 23, 2024) https://www.sba.gov/article/2024/12/23/sba-strengthens-lending-network-new-public-private-partnerships.

initial capital contribution to satisfy the $5 million paid-in capital requirement, and included a letter from Citizens Private Bank to evidence the deposit.

42. On or about January 17, 2025, OCRM confirmed receipt of Lafayette Square SBLC's credit policy, internal control policy, and certification of capital.

43. On or about January 27, 2025, OCRM informed Lafayette Square SBLC that its preliminary review was provided to OCRM senior leadership for opinion and/or additional comments.

44. Also in January 2025, an individual from SBA's Office of Capital Access ("OCA") reached out to Lafayette Square SBLC to continue the SBLC onboarding process by introducing Lafayette Square SBLC to its local congressional delegations in Florida.

45. By all accounts, at this stage in the licensing process, Lafayette Square SBLC needed to only enter into the Form 750 Loan Agreement before beginning its important work as a licensed SBLC. However, the SBA never provided a Form 750 Loan Agreement for execution.

46. Upon information and belief, except for Lafayette Square SBLC and other 2024 awardees, the SBA has never rescinded an SBLC license that was approved for tentative award, since the Moratorium was lifted in 2023. In each case, those applicants were always provided a Form 750 Loan Agreement for execution.

C. **SBA Rescinds Lafayette Square SBLC's License Award**

47. On or about February 28, 2025, Lafayette Square SBLC received a letter from the SBA rescinding its award of an SBLC license (the "Rescission Letter"). In the Rescission Letter, the SBA wrote:

> This is to advise you that SBA is rescinding the tentative award because the Agency has determined that the tentative award no longer effectuates 7(a) Loan Program goals and Agency priorities. Among other things, because SBLCs are solely regulated by SBA, the Agency believes that it will not have the capacity to onboard

12

and oversee any additional SBLCs. This is due in part to (1) the current and projected reductions in Agency staffing; and (2) the uncertainty of Agency appropriations levels after the expiration of the current Continuing Resolution on March 14, 2025.

48. The SBA's Rescission Letter does not provide any explanation for why Lafayette Square SBLC's award of an SBLC license "no longer effectuates 7(a) Loan Program goals and Agency priorities."

49. The SBA's Rescission Letter does not identify any aspects or materials submitted in connection with Lafayette Square SBLC's Application, or materials provided in response to the Award Letter, that "no longer effectuates 7(a) Loan Program goals and Agency priorities."

50. Indeed, the SBA's Rescission Letter disregards, *inter alia*, Lafayette Square SBLC's evidence that it meets all SBLC requirements to effectuate 7(a) Loan Program goals and Agency priorities.

51. Although the Rescission Letter notes that the SBA "believes that it will not have the capacity to onboard and oversee any additional SBLCs" due to current and projected staffing reductions and the "uncertainty of Agency appropriations," these purported explanations of the SBA's decision are, upon information and belief, pretextual excuses for its unlawful rescission of Lafayette Square SBLC's license. For instance, the Rescission Letter ignores that OCRM and Lafayette Square SBLC began the "onboarding" in December 2024, more than two months prior. Indeed, by January 27, 2025, the OCRM and SBA confirmed that it had already completed its preliminary review of Lafayette Square SBLC's materials provided in response to the Award Letter. Moreover, adequate staffing and the uncertainty of Agency appropriations are routine issues that arise in all aspects of the SBA's activity. It strains credulity to suggest that these reasons support the rescission of Lafayette Square SBLC's license.

52. Defendants' rescission of Lafayette Square SBLC's award of an SBLC license, reflected in the Rescission Letter, constitutes final agency action subject to judicial review under the APA.

## CLAIMS FOR RELIEF

53. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

54. The APA further provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

55. Courts will "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. 706(2)(A).

56. The SBA is an "agency" whose final actions are reviewable under the APA.

## COUNT I
### Arbitrary and Capricious Agency Action
### (5 U.S.C. § 706(2)(A))

57. Lafayette Square SBLC repeats and incorporates by reference the allegations contained in the preceding paragraphs.

58. The SBA's rescission of Lafayette Square SBLC's award of an SBLC license conflicts with the evidence of Lafayette Square SBLC's compliance with all SBLC requirements presented in its Application and in response to the Award Letter.

59. The SBA's rescission of Lafayette Square SBLC's award of an SBLC license is further contrary to the SBA's mission to help American's start, build, and grow businesses and the 7(a) Loan Program, which supports our nation's economy by providing loans to small businesses that lack adequate access to capital on reasonable terms and conditions.

60. The SBA failed to furnish any specific explanation for the Rescission Letter or how Lafayette Square SBLC's awarded SBLC license no longer effectuates 7(a) Loan Program goals and Agency priorities.

61. The SBA failed to furnish any specific explanation as to how Lafayette Square SBLC failed to satisfy any elements of the Application process or regulatory requirements to receive the SBLC license.

62. The SBA's rescission of Lafayette Square SBLC's award of an SBLC license is therefore arbitrary and capricious in violation of the APA.

63. The SBA's violation of the APA causes ongoing and irreparable harm to Lafayette Square SBLC.

64. Lafayette Square SBLC has no adequate remedy at law.

## COUNT II
### Agency Action Contrary to Law
### (5 U.S.C. § 706(2)(A))

65. Lafayette Square SBLC repeats and incorporates by reference the allegations contained in the preceding paragraphs.

66. Lafayette Square SBLC meets and has complied with all SBLC requirements, including requirements for SBA Lenders, SBA Supervised Lenders, the additional requirements presented in 13 C.F.R. §§ 120.470-490, and SBA's Standard Operating Procedures for origination, servicing, and liquidation of 7(a) loans.

67. The SBA failed to furnish any specific explanation for the Rescission Letter or how Lafayette Square SBLC's awarded SBLC license no longer effectuates 7(a) Loan Program goals and Agency priorities.

68. The award of an SBLC license to Lafayette Square SBLC does not, in any way, prevent the effectuation of 7(a) Loan Program goals and Agency priorities.

69. The SBA exceeded its statutory and regulatory authority, and acted not in accordance with law, in violation of the APA, by rescinding Lafayette Square SBLC's award of an SBLC license.

70. The SBA's rescission of Lafayette Square SBLC's award of an SBLC license is therefore contrary to law in violation of the APA.

71. The SBA's violation of the APA causes ongoing and irreparable harm to Lafayette Square SBLC.

72. Lafayette Square SBLC has no adequate remedy at law.

## PRAYER FOR RELIEF

For the foregoing reasons, Lafayette Square SBLC respectfully requests this Court:

1. Declare unlawful and set aside the Rescission Letter and the SBA's rescission of Lafayette Square SBLC's award of an SBLC license;

2. Order Defendants to consider Lafayette Square SBLC's Application and materials submitted in response to the Award Letter consistent with applicable law and the evidence before SBA;

3. Order Defendants to deliver SBA's Form 750, Small Business Administration Loan Guaranty Agreement for execution by Lafayette Square SBLC, for which it has demonstrated eligibility and satisfied all necessary conditions precedent;

4. Award Lafayette Square SBLC its costs and reasonable attorney fees;

5. Grant such other and further relief as the Court deems just and proper.

Dated: March 14, 2025                               Respectfully submitted,

*/s/ Robert T. Smith*
Robert T. Smith (D.C. Bar No. 996033)
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave., NW
Washington, DC 20006-3404
Tel.: (202) 625-3500
robert.smith@katten.com

David A. Crichlow*
Brian L. Muldrew*
Christopher T. Vazquez*
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Tel.: (212) 940-8800
david.crichlow@katten.com
brian.muldrew@katten.com
christopher.vazquez@katten.com

*Counsel for Plaintiff*
*Lafayette Square SBLC, LLC*

*\* Pro Hac Vice forthcoming*